1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

LINDA LOOMIS obo SHERRY
WRIGHT-GRANT, deceased,

CASE NO. 12-cv-06087 JRC

10

Plaintiff,

ORDER ON PLAINTIFF'S
COMPLAINT

11

v.

12

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

Defendant.

15

16

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

17

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

18

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

19

States Magistrate Judge, ECF No. 8). This matter has been fully briefed (*see* ECF Nos.

20

14, 18, 19).

21

After considering and reviewing the record, the Court finds that the ALJ's step

22

five finding that Ms. Wright-Grant could perform other work in the national economy

23

was not based on substantial evidence as she failed to elicit testimony from the vocational

24

1  expert regarding whether or not an individual with Ms. Wright-Grant's residual

2  functional capacity, background and skills could perform said work. As this error is not

3  harmless error, this matter shall be reversed and remanded pursuant to sentence four of

4  42 U.S.C. § 405(g) to the Acting Commissioner for further administrative proceedings.

5                                    BACKGROUND

6        SHERRY WRIGHT-GRANT, ("Ms. Wright-Grant"), was born in 1950 and was

7  56 years old on the alleged date of disability onset of February 17, 2007 (*see* Tr. 215-17,

8  218-21). Ms. Wright-Grant had attended two years of college at the time of her first

9  administrative hearing and had worked at a start-up microbrewery in various positions,

10  including CEO/President until the business was closed (Tr. 73-75).  Ms. Wright-Grant's

11  final job was in a craft store where she was injured.  Following the accident, Ms. Wright-

12  Grant tried to go back to work doing light duty but was unable to continue and was

13  terminated (Tr. 75-77).

14        At the time of Ms. Wright-Grant's first hearing (February 10, 2010), Ms. Wright-

15  Grant had at least the severe impairments of "fibromyalgia and chronic lumbar pain (20

16  CFR 404.1520(c) and 416.920(c))" (Tr. 106).

17                                PROCEDURAL HISTORY

18        On January 30, 2008, Ms. Wright-Grant filed an application for disability

19  insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental

20  Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the

21  Social Security Act (*see* Tr. 215, 218). The applications were denied initially and

22  following reconsideration (Tr. 96-99). Ms. Wright-Grant's requested hearing was held

before Administrative Law Judge Marie Palachuk ("the ALJ") on February 10, 2010 (*see* Tr. 54-95). On April 9, 2010, the ALJ issued a written decision in which the ALJ concluded that Ms. Wright-Grant was not disabled pursuant to the Social Security Act (*see* Tr.100-19).  On May 23, 2011, the Appeals Council remanded this matter back to the ALJ (Tr. 120-23).  Ms. Wright-Grant died on June 25, 2011 (Tr. 306-09).

A second hearing was held on January 12, 2012 (Tr. 42-53) and on January 27, 2012, the ALJ again found that Ms. Wright-Grant was not disabled pursuant to the Social Security Act (*see* Tr. 16-34).

On October 26, 2012, the Appeals Council denied plaintiff's request for review, making the subsequent written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff, Ms. Wright-Grant's mother, on her daughter's behalf, filed a complaint in this Court seeking judicial review of the ALJ's written decision in late December 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on April 1, 2013 (*see* ECF Nos. 11, 12).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ committed reversible error by finding Ms. Wright-Grant had transferable skills in cashiering; (2) Whether or not the ALJ committed reversible error by not presenting her RFC to the VE in regards to the three jobs the ALJ found that Ms. Wright-Grant could perform; (3) Whether or not the ALJ committed reversible error by failing to find that Ms. Wright-Grant met grid rule 201.07; (4) Whether or not the ALJ committed reversible error by her failing to consider Ms. Wright-Grant's handling, reaching,

1   fingering, and sitting limitations in her RFC; and (5) Whether or not the ALJ committed

2   reversible error by improperly rejecting Dr. Reinmuth's opinion that Ms. Wright-Grant

3   was incapable of working 40 hours a week (*see* ECF No. 14, pp. 1-2).

4   STANDARD OF REVIEW

5         A claimant bears the burden of proving disability within the meaning of the Social

6   Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

7   the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

8   *Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to

9   engage in any substantial gainful activity" due to a physical or mental impairment "which

10   can be expected to result in death or which has lasted, or can be expected to last for a

11   continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

12   1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's

13   impairment(s) are of such severity that claimant is unable to do previous work, and

14   cannot, considering the claimant's age, education, and work experience, engage in any

15   other substantial gainful activity existing in the national economy. 42 U.S.C. §§

16   423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

17   1999).

18         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

19   denial of social security benefits if the ALJ's findings are based on legal error or not

20   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

21   1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

22   1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

1   such "'relevant evidence as a reasonable mind might accept as adequate to support a

2   conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

3   *Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not

4   substantial evidence supports the findings by the ALJ, the Court should "review the

5   administrative record as a whole, weighing both the evidence that supports and that

6   which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th

7   Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

8          In addition, the Court must independently determine whether or not "'the

9   Commissioner's decision is (1) free of legal error and (2) is supported by substantial

10  evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.*

11  *Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

12  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d

13  530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of

14  administrative law require us to review the ALJ's decision based on the reasoning and

15  actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

16  what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219,

17  1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other

18  citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we

19  may not uphold an agency's decision on a ground not actually relied on by the agency")

20  (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals,

21  legal errors committed by the ALJ may be considered harmless where the error is

22  irrelevant to the ultimate disability conclusion when considering the record as a whole.

1 *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*,
2 556 U.S. 396, 407 (2009).

3 <u>DISCUSSION</u>

4 The ALJ came to a determination regarding Ms. Wright-Grant's residual
5 functional capacity ("RFC"), and then presented this RFC to the vocational expert ("VE")
6 at plaintiff's hearing (*see* Tr. 25, 46). The VE testified that an individual described in the
7 ALJ's hypothetical, with the presented RFC, would not be capable of performing Ms.
8 Wright-Grant's past relevant work (*see* Tr. 46). The ALJ relied on this testimony, and
9 concluded in her written decision that Ms. Wright-Grant "demonstrated that she lacked
10 the [RFC] to perform the exertion requirements of her past relevant work" (*see* Tr. 27).

12 Plaintiff contends that after finding that Ms. Wright-Grant was unable to perform
13 her past relevant work at step four, the ALJ never asked the VE if an individual with Ms.
14 Wright-Grant's RFC and background could perform other work existing in the national
15 economy. Defendant argues that "this testimony was in response to a general line of
16 questioning with the precursor of the hypothetical identified above," and that the "ALJ
17 reasonably and appropriately concluded that this was in response to the hypothetical that
18 was established moments before the [VE's] testimony" (*see* Response, ECF No. 18, pp.
19 9-10). Based on a review of the relevant record, the Court concludes that the ALJ never
20 asked the VE if an individual with Ms. Wright-Grant's RFC and skills could perform any
21 other work, much less the three jobs identified by the ALJ in her written decision as jobs
22 Ms. Wright-Grant could perform. As a result, the ALJ's step five finding is not based on

1  substantial evidence and, as explained below, this matter must be reversed and remanded

2  for further consideration.

3         **(1)    Whether or not the ALJ committed reversible error by not presenting**

              **her RFC to the VE in regards to the three jobs the ALJ found Ms.**

4                **Wright-Grant could perform and if the ALJ committed reversible**

              **error by finding Ms. Wright-Grant had transferable skills in**

5                **cashiering.**

6         After determining a claimant's RFC, the ALJ must determine whether or not a

7  claimant's impairments prevent her from doing her past relevant work. *See* 20 C.F.R. §

8  404.1520(f).   If the ALJ finds that the claimant has not shown an incapability of

9  performing past relevant work, the claimant is not disabled for social security purposes

10  and the evaluation process ends.  *See id.*  Claimants bear the burden to establish the

11  inability to perform past work. *See Barnhart v. Thomas,* 540 U.S. 20, 25 (2003) (footnote

12  omitted); *Pinto v. Massanari*, 249 F.3d 840, 844, 845 (9th Cir. 2001) (*citing* 20 C.F.R. §§

13  404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)).  As noted

14  by the Ninth Circuit:

15

16         At step four, claimants have the burden of showing that they can no
    longer perform their past relevant work.  (internal citations to 20 C.F.R. §§

17      404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.
    1990)).  Once they have shown this, the burden at step five shifts to the

18      Secretary to show that, taking into account a claimant's age, education, and
    vocational background, the claimant can perform any substantial gainful

19      work in the national economy.  (internal citations to 20 C.F.R. §§
    404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.

20      2000)).

21

22  *Pinto, supra*, 249 F.3d at 844.

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 7

1    First, the Court notes that the hypothetical presented to the vocational expert is

2    identical with the RFC for Ms. Wright-Grant determined by the ALJ (*see* Tr. 25, 46). The

3    ALJ specifically asked the VE if someone with Ms. Wright-Grant's RFC would have

4    been able to do any of her past work (*see* Tr. 46). The VE testified that such an individual

5    would not be able to do any of Ms. Wright-Grant's past relevant work (*see id.*). Next, the

6    ALJ asked the VE if Ms. Wright-Grant obtained any transferable skills from her retail

7    sales position at Michael's crafts store that she could have transferred to other skilled or

8    semi-skilled work (*see id.*).  The VE testified in the affirmative (*id.*).

9    When the ALJ asked the VE to specify the transferable skills, the VE indicated

10   that the primary skill acquired was that of cashiering, and the VE further offered three

11   jobs to which the skill of cashiering would transfer (*see* Tr. 46-47). Finally, the ALJ

12   asked if the VE's testimony was consistent with the Dictionary of Occupational Titles

13   (*see* Tr. 47). After a review of the entire hearing record, the Court concludes that the ALJ

14   never asked the VE if an individual with the indicated RFC and the transferable skill of

15   cashiering would be able to do other jobs existing in the national economy (*see* Tr. 43-

16   53). However, the ALJ indicated in her written decision that the VE "was asked if any

17   occupations exist which could be performed by an individual with the same age,

18   education, past relevant work experience, and [RFC] as the claimant, and which require

19   skills acquired in the claimant's past relevant work but no additional skills" (*see* Tr. 28).

20   However, this finding is not based on substantial evidence in the record, as no such

21   question was asked of the VE (*see* Tr. 43-53). The ALJ next found that the VE

22   "responded and testified that representative occupations such an individual could perform

include: check cashier . . . . tub room cashier . . . . and food checker" (*see* Tr. 28). However, again, although the VE testified that Ms. Wright-Grant had transferable skills that applied to these jobs, the VE never testified that an individual with Ms. Wright-Grant's RFC along with those skills could have preformed the cashier and food checker jobs.

Based on the relevant record, the Court concludes that the ALJ's finding that Ms. Wright-Grant could have performed other work at step five in the sequential disability evaluation process is not based on substantial evidence in the record. This is not harmless error, as Ms. Wright-Grant carried her burden to demonstrate that she was not capable of performing her past relevant work at step four of the sequential disability evaluation process. It is the step five finding, containing the ALJ's error, which formed the basis for the non-disability determination in the ALJ's written decision.

Furthermore, regarding the ALJ's finding that Ms. Wright-Grant had acquired the transferable skill of cashiering, the VE actually testified that if Ms. Wright-Grant's past relevant work was primarily stocking, as Ms. Wright-Grant had testified that it was, then such work would not have transferable skills to other jobs that Ms. Wright-Grant might have been able to perform (*see* Tr. 50 ("Attorney: Would that have transferable skills to sedentary work?  VE: I, I don't believe so")). Therefore, although the ALJ mentioned the job title indicated by Ms. Wright-Grant was "sales associate" and although the ALJ noted that Ms. Wright-Grant "described her duties at Exhibit 4E to include cashiering, customer service and sales in addition to stocking and other job duties," the Court concludes that the ALJ's finding that Ms. Wright-Grant had transferable work skills of cashiering that

would transfer to other sedentary work is not based on substantial evidence in this record as a whole.

The issue of whether or not Ms. Wright-Grant acquired transferable skills must be evaluated anew, as must the step five determination regarding other work that Ms. Wright-Grant could have performed.

However, the Court declines to remand this matter with a direction to award benefits. Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

Although the Court has concluded that the ALJ's finding that Ms. Wright-Grant obtained transferable work skills was not based on substantial evidence in the record, the VE's testimony on this issue was less than clear. It is possible that following proper questioning, a proper finding can be made that Ms. Wright-Grant obtained work skills transferable to sedentary jobs: such a proper finding was not made herein, however. Similarly, although the Court has found that the ALJ never propounded the relevant hypothetical to the VE, following remand of this matter, proper questioning may elicit vocational testimony demonstrating that Ms. Wright-Grant would have been able to make a transition to other work existing in the national economy.

**(2)    Whether or not the ALJ committed reversible error by failing to find that Ms. Wright-Grant met grid rule 201.07.**

Plaintiff argues that because the ALJ's finding that Ms. Wright-Grant had obtained work skills transferable to sedentary jobs was erroneous, Ms. Wright-Grant should be found presumptively disabled pursuant to SSA "grid rule 201.07" (*see* Opening Brief, ECF No. 14, pp. 16-17 (*citing* C.F.R. § 404 app 2 to subpart P, 201.07)). However, the Court has determined that the finding regarding transferability of the cashiering work skills to sedentary jobs that Ms. Wright-Grant could have performed is a finding that should be addressed anew. Therefore, the issue of if she was presumptively disabled pursuant to the grids also is an issue that should be addressed anew following remand of this matter.

1
2

**(3)    Whether or not the ALJ committed reversible error by improperly rejecting Dr. Reinmuth's opinion that Ms. Wright-Grant was incapable of working 40 hours a week.**

3
4
5
6
7
8
9
10
11
12

The ALJ rejected the opinions of treating physician, Dr. K. Scott Reinmuth, M.D. (*see* Tr. 26, 667-670, 736-39). The reasoning of the ALJ is as follows: Ms. Wright-Grant "was only a little over three months out from her surgery at that time, and was improving, with nothing in the record after that time to suggest she was permanently disabled by her surgery" (*see* Tr. 26). However, Dr. Reinmuth did not opine that she was permanently disabled by her surgery, and instead, Dr. Reinmuth indicated which particular opinions regarding Ms. Wright-Grant's limitations were based on the lumbar disc disease and degenerative joint disease, verses being based on Ms. Wright-Grant's diagnosed fibromyalgia (*see* Tr. 738).

13
14
15
16
17
18
19
20
21
22
23

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). When the decision is unfavorable, it must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at *11-*12.

24

On September 29, 2009, Dr. Reinmuth opined that Ms. Wright-Grant suffered from moderate limitations on her ability to sit, stand, walk, lift, handle and carry, as a result of her fibromyalgia (*see* Tr. 669). Similarly, on August 30, 2010, Dr. Reinmuth indicated that based on Ms. Wright-Grant's fibromyalgia, she suffered from marked limitations on her ability to stand, walk, lift and carry (Tr. 738). These opinions of limitations are in addition to, and clearly separate from, the limitations resulting from degenerative joint disease and lumbar disc disease.

Based on a review of the record, it appears that after approximately a year of being Ms. Wright-Grant's treating physician, Dr. Reinmuth opined that the limitations resulting from Ms. Wright-Grant's fibromyalgia actually had worsened (*see* Tr. 669, 738). The ALJ's comments regarding the fact that (one of) Dr. Reinmuth's opinion occurred after Ms. Wright-Grant's L5-S1 back surgery does not appear very relevant to his opinion regarding limitations resulting from fibromyalgia. The ALJ appears to find that Ms. Wright-Grant was experiencing improvement in her disc disease following her back surgery, therefore the doctor's opinions about her limitations from fibromyalgia should be rejected. This is not a finding based on substantial evidence in the record. The ALJ has not explained why Ms. Wright-Grant's May, 2010 back surgery, even if it did result in improvement, negates the opinions from treating physician, Dr. Reinmuth, regarding limitations opined to result from fibromyalgia.

Based on the relevant record, and for the reasons stated, the Court concludes that the opinions of Dr. Reinmuth should be evaluated anew following remand of this matter.

1     **(4)    Whether or not the ALJ committed reversible error by her failing to
2             consider Ms. Wright-Grant's handling, reaching, fingering, and sitting
            limitations in her RFC.**

3     As noted by the Court, Dr. Reinmuth opined limitations in sitting and handling

4 that were rejected improperly by the ALJ, *see supra*, section 3. As a result, and based on

5 the relevant record, the Court concludes that Ms. Wright-Grant's RFC must be

6 determined anew following remand of this matter.

7 CONCLUSION

8

9     The Court has concluded that the ALJ never propounded the relevant hypothetical

10 to the vocational expert, depriving the step five finding of substantial evidence.

11     The Court also has concluded that the opinions of Dr. Reinmuth should be

12 evaluated anew, as should the issue of Ms. Wright-Grant's RFC and the transferability of

13 work skills, particularly, cashiering, to sedentary jobs. It may be necessary to consider if

14 Ms. Wright-Grant was presumptively disabled pursuant to SSA grid rule 201.07.

15     Based on the stated reasons and the relevant record, the Court **ORDERS** that this

16 matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

17 405(g) to the Acting Commissioner for further consideration.

18     **JUDGMENT** should be for plaintiff and the case should be closed.

19     Dated this 13th day of March, 2014.

20

21

22                         J. Richard Creatura
                        United States Magistrate Judge

23

24